## HOBGOOD *vs*. MARTIN.

1. Although the Court, in decreeing a settlement on the wife, duly attends to the interests of the children, and gives them an interest in the property, (provided the wife's estate therein does not cease at her death); yet it does so only on the assumption, that the wife is anxious to provide for her children.

2. Children have no independent equity of their own—their claim to the consideration of the Court is capable of being either expressly given up by the wife, or tacitly waived by her death without having asserted it.

3. The right of the children attaches on the wife's instituting proceedings for a settlement; and, therefore, if she should die, while such are pending, without expressly waiving her right, the children are permitted to enforce their claim by a Supplemental Bill.

In Equity, in Fayette Superior Court. Decision by Judge BULL, on the 11th of May, 1860.

This case came up, and was heard, upon the following state of facts, as shown by the record, to wit:

Mary Ann Gausden, by her next friend, Jackson Martin, filed a bill in equity, in Fayette Superior Court, in which she alleged: that she was a *feme covert*, being the lawful wife of Jackson C. W. Gausden, and that, on the twentieth day of December, 1832, one Wright Martin, the father of the complainant, made and published his last will and testament, by which he gave to each of his children, and to his wife, Nancy Martin, during her natural life, an equal share of his estate, and appointed his said wife executrix, and one Ephraim Pennington executor of his said will; that shortly after making said will, the said testator departed this life,

leaving said wife and eight children heirs and distributees of his estate; that said estate was kept together, by the said executrix, for many years after the testator's death, and until about the year 18—, when said executrix. departed this life, leaving the property of said estate, with its increase, remaining in kind; that after the death of the executrix, and after the said Pennington had been removed from his office of executor, James L. Hobgood and Jesse L. Blalock applied for and obtained letters of administration *de bonis non*, with the will annexed, so far as the personal property of said estate was concerned, and also letters of administration so far as the real property of said estate was concerned, as the will did not convey the land, for want of the requisite number of witnesses; that before he had taken any other step in the said administration, the said Blalock was elected Ordinary of said county, and his letters abated, leaving the whole estate in the hands of the said Hobgood, where it still remains, except such portions as may have been advanced and paid out to the creditors and legatees of said estate; that said Hobgood now has in his hands the sum of five thousand dollars, or other large sum, belonging to said estate, arising from the sale of the real and personal estate, and the hire of negroes, to one-eighth part of which the complainant is entitled under said will, and to one-seventh part of which she is entitled, if Samuel Martin, one of the children of the testator, who has died without leaving wife, child or children, and without a will, received, by way of advancement, an amount sufficient to cover the share to which he is entitled under said will; that on the 3d and 5th days of May, 1854, the heirs of said estate, being all of full age, according to the terms of a written agreement, divided all the negroes of said estate, except one negro woman, by the name of ———, born on the last day of the division; that, by said agreement, one share of said estate was to be left in the hands of the administrator, as the part to which Samuel Martin is entitled, unless advanced sufficient to cover his share, and that neither share was to be considered as delivered, or the assent of the administrator as given until receipts were passed; that said administrator still holds and retains possession of the part and share to which complainant is entitled, consisting, as she is informed, of one negro man by the name of Randall, about 40 years of age; Eady, a woman, about 30 years of

age; Jim, a boy about 6 years of age; Frances, a girl about 6 years of age, and William, an infant child; that said negroes are still in the possession of the said administrator and have never been, in any way or manner, reduced to possession by the husband of complainant; that the said share of said estate to which the complainant is entitled, is all the property or means she or her husband has to support, maintain and educate their two children; that her said husband, with whom she is now living, is hopelessly insolvent, and is the unfortunate victim of intemperance, which causes him to lead an idle, immoral and profligate course of life, and makes him the easy dupe of designing persons, who complainant believes will get from him, without consideration, all of said property, if he is allowed to acquire title thereto, by reducing the same to possession, and that complainant will thus be left without the means of support, and be deprived of the means of supporting, maintaining and educating her said children; that said share of complainant is now in the hands of said administrator, free from all incumbrance, and subject to be turned over to such person as the Chancellor may appoint to receive the same, in trust for the benefit and support of the complainant and her family; for which purpose she filed said bill.

The complainant prays, by her bill, the defendant's answer as to the facts; and that he may account for her full share of said estate, and deliver the same to a trustee to be appointed by the Chancellor, to be, by such trustee, held and appropriated to the sole and separate use and benefit of the complainant and her children; and that her husband may be enjoined from receiving said property, or, in any way, reducing it to possession; and for general relief.

Pending this bill, and before any decree, either interlocutory or final, was passed or rendered therein, the complainant died, leaving three children, to wit: Nancy Jane Gausden, William H. Gausden, and Camilla Gausden, of whose persons and property Jackson Martin applied for and obtained letters of guardianship, and, as guardian of said minor children, filed his bill in equity, in Fayette Superior Court, alleging the facts contained in the former bill of the said Mary Ann Gausden, and that she had died without reducing said property to possession, and that her said husband had not reduced the same to possession, and that he had ob-

tained the guardianship of said children, and that a portion of the property was then levied on, by virtue of a *fi. fa.* from Fayette Superior Court, in favor of Austell & Camp, against the said Jackson C. W. Gausden, and would be sold, unless restrained and prevented by the process of the Court.

This bill prays the defendant's answer as to the facts stated in the bill, and that the further progress of the *fi. fa.* of Austell & Camp be enjoined; and that the said Jackson C. W. Gausden be restrained from reducing the property to possession; and that the administrator may account with and deliver to complainant all of said estate to which the said Mary Ann was entitled in her lifetime, to be by him used and controlled for the sole use and benefit of his said wards; and for general relief.

To this last bill there was a general demurrer filed, alleging a want of equity.

After argument had, the presiding Judge passed the following order and judgment, to wit:

"According to the practice of the English Chancery Courts, when a bill of this kind was filed, the Court granted a decretal order, requiring the husband to appear before the master, to make proposals of settlement, and if the wife died before the order, no right survived to the children. But if she died after the order, this right survived. In this State, we have no such practice, and to make the rights of the children depend on a proceeding which can not take place, would be to defeat their claim entirely. As this is a new question of practice in England, and believing that the rule ought to be so modified to suit our own practice, as not to defeat the claims of the children, it is ordered that the demurrer be overruled."

To this order and judgment the defendant in the Court below excepted, and now asks that it may be reversed.

A. W. Stone, for the plaintiff in error.

M. M. Tidwell, for the defendant in error.

*By the Court.*—Lumpkin, J., delivering the opinion.

The question in this case is one of interest and new in this Court.

Mary Ann Gausden filed a bill in behalf of herself and children, against the administrator *de bonis non cum testamento annexo* of her deceased father, Wright Martin, praying that certain property bequeathed to her by her said father, and not reduced to possession by her husband, be set apart for the support of herself and children.

Pending the bill, and before any order, interlocutory or final, had been passed, the complainant died. A supplemental bill was filed by the children, praying that the property in question, and alleged to be still in the hands of the administrator, might be set apart for the maintenance and education of the children. A general demurrer, for want of equity, was filed to the bill, and overruled; and the point presented for adjudication is: Does the wife's right in equity to a settlement survive to her children—she dying pending the bill?

By the practice of the English Chancery Courts, where such a bill was filed, the Court granted a decretal order, requiring the husband to appear before the master and make proposals for a settlement; and if the wife died before the order, the weight of authority, in that country, is—notwithstanding decided cases to the contrary—no right survived to the children; *aliter*, if she died after the order. (*Chauncey's Rights of Women, Chap. vii., p.* 532.)

In this State, we have no such practice as that adopted in England. Would it be right to cut off children, after the death of their mother, from a provision out of her unsettled equitable portion, for want of such decretal order? We think not. And, believing that some rule ought to be adopted, founded on principle, and in accordance with the organization of our own judiciary, we affirm the judgment rendered in this case.

This doctrine is very fully stated by Mr. Hovendon, in his Treatise on Frauds. He says: "The claim of children to have a settlement made on them out of their mother's equitable property, is entirely dependent upon her living up to the period of a final decree for a settlement upon her and her issue; a decree that the husband should lay before the master proposals for such a settlement, will not establish the claim of the children, which may be disappointed by the mother if she see fit to come into Court and give up the property. The right of the children, in such case, can only arise out of contract or final decree.

"But if the mother die, after a proposal for a settlement is directed, without having waived the benefit thereof, then, although such settlement was not completed in her lifetime, the husband will be bound by the proposal, as well as his assignees—for the right of the wife does not depend upon a decree or order; her equity attaches at the same time with the jurisdiction of the Court; and, when once a bill has been filed in her behalf—though she should die before any answer is put in—yet, if she has not waived her equity, her children will have an immediate right to the provision—which their mother could have required, if she had lived." (*Two volumes in one, p.* 79.)

Thus it will be perceived, that, according to Mr. Hovendon, the right of the wife does not depend upon the decretal order, but her equity attaches with the jurisdiction of the Court—that is, when the bill is filed; and that the rights of the children, who claim through her, and not as an independent and substantial right in themselves, will not be lost by the death of the mother—she not having waived her right.

And Lord Chancellor Eldon, in the case of Murray *vs.* Elibank (10 *Ves. Chan. Rep.* 83), in referring to the case of McCauley *vs.* Phillips, decided by Lord Alvanley, remarked: "I should have supposed that a decree made in the cause proceeded upon the right or equity in the wife *at the filing of the bill;* for decrees are only declarations of the Court upon the rights of the parties, *'when they begin to sue.'* The wife is entitled to call for a declaration; that she then had a right to a provision for herself and her children."

Mr. Justice Story states the doctrine thus: "The equity of the children is not one to which, in their own right, they are entitled. It can not, therefore, be asserted against the wishes of the wife, or in opposition to her rights. The Court, in making a settlement of the wife's property, always attends to the interests of the children; because it is supposed that, in so doing, it is carrying into effect her own desires to provide for her offspring. But if she dissents, the Court withholds all right from the children. But the right of the children to the benefit of a settlement attaches *upon the wife's filing a bill for that purpose;* and if she should die pending the proceeding, without waiving the right to a settlement, the children may, by a supplemental bill, enforce their claim." (*Stor. Eq. Jur.* §1419.)

And for the principle thus broadly asserted by Mr. Justice Story, numerous English cases are cited.

We feel authorized, then, to hold that the right of the children attaches upon the filing of the bill by the wife in her lifetime; and that her subsequent death will not defeat the claims of the children. And this appears to be the principle upon which the doctrine rests. If the wife die without asserting her right, she is supposed to have waived it for the benefit of her husband—and this she may do in England, even after the decretal order is passed. But having once asserted her right, the jurisdiction of equity attaches, and it will be exercised for the benefit of the children, although the wife die before a final decree is rendered. If this is not so, then it will be perceived that children in this State are in a worse condition than in England. For there, their right is fixed by the decretal order, unless waived expressly by the mother afterwards; and it is not suspended upon the death of the mother, until a final decree, as is contended for by counsel for the plaintiff in error, is the case here.

It is argued that it interferes with the statutory privilege of the husband, to acquire, by administration, the right to recover and hold, without being subject to distribution, all the rights and credits of his deceased wife. But he takes this right subject to all the incidents resulting from the wife's equity. After a decretal order in England, the husband could not upon the death of the wife, exclude the children by administering upon his wife's estate; and if their right here attaches upon the filing of the bill by their mother, this is not such a right in his wife as he could be entitled to recover for his own use.

The doctrine of a wife's equity to a settlement, as against her husband, his creditors and assignees, is comparatively modern in Georgia. Its enforcement was unknown in practice when I came to the Bar. The case before us is another step in the right direction; hence, we desire to see it established upon a firm foundation. We doubt not it will commend itself to the favor of the public, as well as of the profession.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.